UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL YORK, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:  20-3669 (RC) |
| | : | |
| v. | : | Re Document No.:  7 |
| | : | |
| AYELLOR KARBAH, | : | |
| | : | |
| THE DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS

### INTRODUCTION

This case stems from an altercation between the Plaintiff, Michael York, and Defendant Ayellor Karbah, who was at the time a police officer of the Metropolitan Police Department of the Defendant District of Columbia. York filed a three-count complaint against Karbah and the District, alleging violation of his Fourth Amendment rights through 28 U.S.C. § 1983 and assault on the part of Defendant Karbah and Intentional Infliction of Emotional Distress on the part of the District. *See* Compl., ECF No. 1. The District has moved to dismiss the intentional infliction of emotional distress claim against it. *See* Def.'s Mot. Dismiss, ("Def.'s Mot."), ECF No. 7, York has opposed. *See* Pl.'s Opp'n to Def.'s Mot. Dismiss ("Opp'n"), ECF No. 10.

### FACTUAL BACKGROUND

The facts of this case are almost entirely disputed, but the Court presumes the veracity of the allegations in the Complaint, as it must at this stage. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). York was driving northbound on I-395, from Virginia

to the District, on December 13, 2019, when Karbah's vehicle entered the highway from the right and attempted to merge into the lane where York was driving. Compl. ¶¶ 13–14. Karbah was at the time employed by the District as a police officer with the Metropolitan Police Department. Compl. ¶ 28. Karbah "aggressively attempt[ed] to force his way into Plaintiff's lane," while "vocalizing toward Plaintiff" and making eye contact with him, eventually clipping York's passenger side mirror. *Id.* ¶¶ 17–20.

At that point, York stopped his car and Karbah drove in front of him, parked at an angle blocking the entire lane, and exited his vehicle. *Id.* ¶ 21. Karbah exited his vehicle with a weapon drawn, shouting "you could have killed me and my wife" and brandishing his handgun at York while approaching him. *Id.* ¶¶ 22–23. York remained in his vehicle and called 911. *Id.* ¶¶ 24–25. Karbah then stated "I am a cop but I can't investigate myself so I am calling the police," and stood in front of York's vehicle while making the call. *Id.* ¶ 26. Karbah made known to York that he was employed by the Metropolitan Police Department and took pictures of York's license plate. *Id.* ¶ 27. As a result of this incident, Karbah was investigated by the Metropolitan Police Department, and was allegedly terminated or otherwise disciplined. *Id.* ¶¶ 29–30.

## ANALYSIS

### A. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other*

*grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012). As such, a court should presume that the complaint's factual allegations are true and construe them liberally in the plaintiff's favor. *Philip Morris, Inc.*, 116 F. Supp. 2d at 135. A court ruling on a motion to dismiss confines its review to factual allegations in the complaint, documents attached or incorporated into the complaint, and matters of which it can take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

But the complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Assuming all factual allegations are true, a plaintiff's right to relief must rise above "the speculative level." *Twombly*, 550 U.S. at 555–56. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Ashcroft*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *Twombly*, 550 U.S. at 555.

### B. Vicarious Liability

This Motion to Dismiss concerns only the District's liability for Count Three.[1] An employer is liable for an employee's tortious conduct if the employee was acting "within the

---

[1] At the outset the Court notes some confusion in the briefing about what cause of action York is asserting against the District. The Complaint labels Count Three as "Defendant District of Columbia's Intentional Infliction of Emotional Distress on Plaintiff York," Compl. at 8, which is naturally the cause of action addressed in the District's Motion to Dismiss, Def.'s Mot. at 3. But York's opposition brief embarks exclusively on a discussion of the separate tort of negligent infliction of emotional distress. Opp'n at 5–6; *see also Harris v. U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 916 (D.C. Cir. 2015) ("[I]ntent and negligence are regarded as mutually exclusive grounds for liability.") (cleaned up). But the Court need not address the elements of either, as the issue of vicarious liability is dispositive. The Court also need not decide whether York conceded the District's arguments regarding the elements of intentional infliction of emotional

3

scope of their employment." *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1984); *see also Wade v. District of Columbia*, 310 A.2d 857, 863 (D.C. 1973) ("[T]he District of Columbia may be sued under the common law doctrine of *respondeat superior* for the intentional torts of its employees acting within the scope of their employment."); Restatement (Second) of Agency § 219(1) (Am. Law Inst. 1958). If an employee was not acting within the scope of their employment, the employer is generally not liable unless the employer "intended the conduct or the consequences," the employer "was negligent or reckless," the conduct violated the employer's non-delegable duty, or the employee "purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency § 219(2).

### 1. York has not sufficiently pleaded that Karbah was acting within the scope of his employment.

The standard way to hold an employer such as the District liable for the tortious conduct of employees is through the doctrine of *respondeat superior*. "There are two requirements to establish *respondeat superior* liability: (1) the existence of an employer-employee relationship, and (2) the tortious conduct occurs while the employee is acting within the scope of his employment." *Sheppard v. United States*, 640 F. Supp. 2d 29, 34 (D.D.C. 2009); *see also Singh v. District of Columbia*, 55 F. Supp. 3d 55, 65 (D.D.C. 2014). The Complaint alleges, and Defendant Karbah has admitted, that he was an employee of the District at the time of the incident. Compl. ¶ 7; Def. Karbah's Answ. ¶ 7, ECF No. 6. The only question is therefore whether Karbah was acting within the scope of his employment during the altercation at issue.

---

distress by failing to respond to them. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

*See Doe v. Sipper*, 821 F. Supp. 2d 384, 387 (D.D.C. 2011) ("[I]n order for an employer to be held liable . . . the employee's transgressing conduct must be within his scope of employment."); *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979) ("The boundaries of liability extend only as far as the servant is acting within the scope of his employment."); *Parker v. Carilion Clinic*, 819 S.E.2d 809, 821 (Va. 2018) (limiting *respondeat superior* "to tortious acts performed within the *scope of the duties* of the employment and in the execution of the *service* for which the employee was engaged.") (internal quotations omitted) (emphasis in original).

"Whether an employee's act was within the scope of employment is a question of fact that usually must be determined by a jury." *Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243, 246 (D.D.C. 1990). But "it becomes a question of law for the Court when the evidence is so insufficient that no reasonable trier of fact could conclude that the act was within the scope of employment." *Id.* Even accepting all the allegations as true, no reasonable trier of fact could find that Karbah was acting within the scope of his employment based on the facts alleged in the Complaint.

First, it appears Karbah was not on duty when the incident occurred. Although the Complaint alleges that Karbah was a "full time" police officer with arrest powers, *see* Compl. ¶ 28, there is no allegation anywhere in the Complaint that he was on duty, driving a police vehicle, or even in uniform at the time. Nor would such allegations make sense in light of the rest of the Complaint. Karbah stated that he was driving with his wife in the car when the accident occurred. *Id.* ¶ 22 (quoting Karbah as saying "you could have killed me and my wife"). And both parties' reaction in the immediate aftermath of the collision was to *call* the police, something that would have been illogical if Karbah had been in uniform or on duty at the time. *See id.* ¶ 24 (quoting York as saying, "what are you doing. I am calling the cops."); *id.* ¶ 25

5

("Plaintiff was in communications with the 911 operator from Arlington County, Virginia on his hands free mobile.  Plaintiff also asked a friend to call the police."); ¶ 26 (quoting Karbah as saying "I am a cop but I can't investigate myself so I am calling the police").

"An employee acts within the scope of his employment if the 'purpose of the act is, at least in part, to further the employer's business and if the act is not unexpected in view of the employee's duties.'"  *Davis v. Megabus Ne. LLC*, 301 F. Supp. 3d 105, 110 (D.D.C. 2018) (quoting *Floyd-Mayers*, 732 F. Supp. at 246).  But for those same reasons, it is clear from the facts in the Complaint that neither party perceived the incident as a traffic stop or other official police business.  Although the Complaint alleges that Karbah photographed York's license plate, Compl. ¶ 27, there is no allegation that York was placed under arrest, given a traffic citation, or even issued a warning by Karbah or any other officer.  In short, the Complaint does not allege that York took any actions that could be construed as "further[ing] the employer's business." *Davis*, 301 F. Supp. 3d at 110.

York's position appears to be that even if Karbah was not on duty, he nonetheless chose to perform official police duties.  *See* Opp'n at 7–8.  Again, that interpretation of events is belied by the facts in the Complaint itself.  There are no allegations that Karbah showed or displayed his badge or issued any orders, the kinds of actions that would normally be required for an officer to assert lawful authority.  When Karbah stated that he was an officer, he simultaneously acknowledged that his involvement in the incident was personal, saying "I am a cop *but I can't investigate myself* so I am calling the police."  Compl. ¶ 25 (emphasis added); *see also id.* ¶ 27 ("Karbah expressed to Plaintiff that he was *reporting a traffic incident* to the Metropolitan Police

6

Department in which he was employed.") (emphasis added).  In other words, Karbah's own statements demonstrate that he viewed his involvement in a personal capacity.[2]

There is also no allegation that Karbah used his connections or authority as a police officer to bring about any further police action against York.  *Cf. District of Columbia v. Tulin*, 994 A.2d 788, 792–93 (D.C. 2010) (defendant officer put in a "priority" call for "officer in trouble" following her personal involvement in a traffic collision that resulted in the plaintiff's arrest by other officers); *Sherrod v. McHugh*, No. 16-cv-0816, 2017 WL 627377, at *1 (D.D.C. Feb. 15, 2017) (detective "allegedly discovered that the other driver's report was false, yet relentlessly used the criminal justice system to harass" the plaintiff).  In fact, there is no allegation that *any* arrest or ticket resulted, or even that other officers arrived on the scene.

Both parties refer to the definition of "scope of employment" found in the Second Restatement of Agency, which includes in part the requirement that the employee's conduct "occur[ed] substantially within the authorized time and space limits."  *See* Def.'s Mot. at 4 (quoting Restatement (Second) of Agency § 228(1)(b)); Opp'n at 7–8 (same).  The authorized space of employment for a Metropolitan Police Department officer is the District of Columbia. *See* D.C. Code § 5-101.02 ("The Metropolitan Police District of the District of Columbia shall be coextensive with the District of Columbia . . . .").  While the Complaint states in its venue assertion that "a substantial part of the events . . . occurred within the District of Columbia," Compl. ¶ 2, it goes on to contradict that statement by alleging that the incident occurred while the parties were "driving northbound on I-395, on [their] way into the District of Columbia from

---

[2] Metropolitan Police Department officers have a statutory obligation to make arrests for offenses committed in their presence, D.C. Code § 5-115.03, and are in that sense considered to "be always on duty," *District of Columbia v. Coleman*, 667 A.2d 811, 818 n.11 (D.C. 1995).  But the facts in the Complaint do not establish that a crime was committed or that Karbah viewed his own action as attempting to make an arrest.

7

Virginia," *id.* ¶ 13. York later concedes in his opposition brief that "Defendant Karbah's conduct occurred within a few hundred feet of the District of Columbia."[3] Opp'n at 8.

Because he was outside of the District of Columbia at the time, it is doubtful that Karbah would have had the authority to initiate a traffic stop, make an arrest, or issue a ticket even if he had intended to do so. The D.C. Court of Appeals has indicated that Metropolitan Police Officers do not generally have police authority outside the geographic bounds of the District of Columbia. *See Rife v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 940 A.2d 964, 965 (D.C.

---

[3] In light of that ambiguity and concession, it is also not entirely clear what law should apply here. Both parties exclusively cite D.C. law, but "[w]here the conduct complained of and the injury both occur in the same state, that state's law will usually control," *Anderson-Bey v. District of Columbia*, 466 F. Supp. 2d 51, 67 (D.D.C. 2006), which in this case is Virginia. Regardless, the standard for *respondeat superior* liability in Virginia would not be met, either. Virginia law provides for a rebuttable presumption that "when the complaint alleges that the employee committed a tort in the context of their employment . . . facts exist (though not specifically pleaded) that would satisfy the established test for vicarious liability," *Doe ex rel. Doe v. Baker*, 857 S.E.2d 573, 585 (Va. 2021) (internal quotations and citation omitted), although "[a] plaintiff can plead herself out of court by affirmatively alleging facts that rebut [that] presumption," *Parker v. Carilion Clinic*, 819 S.E.2d 809, 822 (Va. 2018). A federal court exercising supplemental jurisdiction over a state law claim applies substantive state law and federal procedural law, meaning that the pleading standards of Rule 8 and the dismissal standards of Rule 12 apply here rather than Virginia's rebuttable presumption. *See Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 128 (D.D.C. 2018) (declining to apply a heightened D.C. pleading standard to a supplemental jurisdiction claim in federal court); *Lett v. Great E. Resort Mgmt., Inc.*, 435 F. Supp. 3d 700, 707 (W.D. Va. 2020) (declining to apply Virginia's rebuttable presumption for *respondeat superior* in federal court at the summary judgment stage); *Garver v. Holbrook*, No. 21-cv-235, 2021 WL 2689841, at *4–5 (E.D. Va. June 30, 2021) (declining to apply Virginia's rebuttable presumption for *respondeat superior* to evaluate whether the claim survived the federal standard for fraudulent joinder). York has not alleged sufficient facts to establish *respondeat superior* under substantive Virginia law, which requires that the tortious act have "occurred *while* the employee was in fact performing *a specific job-related service* for the employer, and, but for the employee's wrongdoing, the service would otherwise have been within the authorized scope of his employment." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 23 (Va. 2019) (quoting *Parker v. Carilion Clinic*, 819 S.E.2d at 820) (emphasis in original). "*Respondeat superior* liability cannot be established merely by showing that the employee was 'on the clock,' using the employer's property, or on the employer's premises at the time of the alleged tortious acts or omissions." *Parker v. Carilion Clinic*, 819 S.E.2d at 821.

2007) (affirming the Police Board's denial of survivor's benefits because the officer was not engaged in the performance of duty while he was off-duty in the state of Maryland, where "he had no authority to act as a police officer"); *Coleman*, 667 A.2d 811, 818 n.11 (D.C. 1995) (determining for the purpose of choice-of-law rules that an officer who was on duty but in another state "therefore had no police powers at the time of the incident"). And the disciplinary opinion attached as an exhibit to York's opposition brief expressly cites as part of its reasoning that the disciplined officer "did not have the legal authority in another jurisdiction to give police orders to an individual who was not committing a crime." Ex. B of Opp'n at 6.[4] In other jurisdictions, courts have likewise found that a police officer who is both off-duty and outside their jurisdiction is not acting within the scope of authority for purposes of *respondeat superior*. *See Anderson v. Moussa*, 250 F. Supp. 3d 344, 347–49 (N.D. Ill. 2017) (collecting cases and holding the same). In sum, an off-duty officer outside of his geographic zone of authority is simply not expected or authorized to make traffic stops. Such an action is the kind of "marked and decided" "departure from" the employer's business that severs liability under *respondeat superior*. *Penn Cent. Transp. Co.*, 398 A.2d at 29.

York argues, without any citation to authority, that because the Metropolitan Police Department "has long had the authority to discipline MPD officers for their conduct outside the geographical boundaries of the District . . . . [i]t follows that authority carries with it an obligation of the District to be held responsible for the acts of the officer where there is harm to a

---

[4] A court considering a motion to dismiss normally can only consider documents "either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624. These attachments are neither referenced in nor attached to the Complaint, and York offers no argument as to why the Court should take judicial notice of them. That said, the District does not object to the attachments, they appear to be official government documents, and in any event they are unavailing for York. The Court has therefore considered the attachments.

9

third party." Opp'n at 10.  The sources York provides—the collective bargaining agreement of the Metropolitan Police and a recent disciplinary decision from another case—mean only what they say: that the District can discipline officers for inappropriate behavior committed outside the time and space limitations of their employment.[5]  *See* Exs. A–B of Opp'n.  Given the level of public trust placed in police officers, such supervision is vital.  But it does not follow that liability is coextensive with disciplinary authority.  If anything, accepting York's proposition could have the perverse effect of discouraging the District from exercising that oversight or disciplining officers who exceed their lawful authority or use an unlawful amount of force while off the clock or outside of their jurisdiction.

### 2. York has not sufficiently alleged that Karbah was acting with apparent authority or was aided by agency relation.

Although York discusses "apparent authority" in support of his argument that Karbah was acting within the scope of employment, apparent authority is actually "a separate basis for vicarious liability."[6]  *Sipper*, 821 F. Supp. 2d at 390–91 (discussing Restatement (Second) of Agency § 219(2)(d)).  The Restatement describes: "A master is not subject to liability for the

---

[5] The Complaint in fact alleges that Karbah *was* investigated, disciplined, and eventually terminated for his conduct relating to this case.  Compl. ¶¶ 29–30.

[6] York cites to a series of contract cases on apparent authority in his opposition brief, noting that it "arises when a principal place [sic] an agent 'in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold.'"  Opp'n at 8 (quoting *Drazin v. Jack Pry, Inc.*, 154 A.2d 553, 554 (D.C. 1959)).  The cases York cites provide little in the way of guidance for understanding employer tort liability.  *See Drazin*, 154 A.2d at 553 (validity of lease); *Livingston v. Fuhrman*, 37 A.2d 747, 748 (D.C. 1944) (breach of warranty); *Tel-Ads, Inc. v. Trans-Lux Playhouse, Inc.*, 232 F. Supp. 198, 200 (D.D.C 1964) (breach of contract).  York does not directly discuss Restatement § 219(2)(d), instead arguing that Karbah's apparent authority meant he was acting in furtherance of his employer's purposes, meaning, within the scope of his employment.  *See* Opp'n at 8–9.  But the District did not file a reply objecting to the apparent authority argument.  The Court therefore addresses the apparent authority and aided-by-agency relation theories out of an abundance of caution and rejects them on the merits.

torts of his servants acting outside the scope of their employment, unless . . . the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency § 219(2)(d).  This definition encompasses two closely-related theories of liability: apparent authority and aided-by-agency relation.

It is not certain whether apparent authority or aided-by-agency relation theories could even give rise to vicarious employer liability for a common-law tort claim in the District of Columbia.[7]  *See Sipper*, 821 F. Supp. 2d at 391 ("Unlike some other state supreme courts, the District of Columbia Court of Appeals has never addressed whether § 219(2)(d) applies to common-law claims in the District."); *Turner v. Washington Metro. Area Transit Auth.*, 853 F. Supp. 2d 134, 137 (D.D.C. 2012), *aff'd*, 534 F. App'x 2 (D.C. Cir. 2013) (holding that if "aided-by-agency-relationship" liability did apply to an intentional infliction of emotional distress claim based on sexual harassment in D.C., the same affirmative defenses available in the Title VII context would also apply).  But assuming without deciding that both theories could establish employer liability for common law tort in the District of Columbia, York has not adequately alleged that Karbah acted with apparent authority or that he was aided by an agency relation.

In the context of Title VII, the D.C. Circuit has held that the apparent authority and agency relation theories in § 219(2)(d) are narrow exceptions that "hold[] the employer liable

---

[7] Again, the Court notes that the parties have not provided any argument on the proper choice of law despite acknowledging that the incident occurred in Virginia.  The Supreme Court of Virginia recognizes apparent authority as a separate theory of vicarious liability for torts, *see, e.g.*, *Doe*, 857 S.E.2d at 587 (applying the theory in a "sexual battery" case); *Morris v. Dame*, 171 S.E. 662, 671–72 (Va. 1933) (applying the theory in a negligence action) (favorably cited in *Sanchez v. Medicorp Health Sys.*, 618 S.E.2d 331, 333 (Va. 2005)), but does not appear to have addressed the applicability of an aided-by-agency-relation theory.  Because the Court finds that York has not pleaded sufficient facts under either theory, it assumes without deciding that Virginia would also recognize an aided-by-agency relation theory of employer liability.

only if the tort was accomplished by an instrumentality, or through conduct associated with the agency status." *Gary v. Long*, 59 F.3d 1391, 1397–98 (D.C. Cir. 1995) (internal quotations and citations omitted). For example, "a telegraph company may be held liable for a tort committed by a telegraph operator who sends a false telegraph message" because "liability is based upon the fact that the agent's position facilitates the consummation of the tort, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him."[8] *Id.* at 1397.

But that is not what is alleged to have happened here. Neither York nor an objective third party viewing the incident could have concluded that Karbah was acting with the authority of the District *at the time the act was committed*. The conduct giving rise to the alleged intentional infliction of emotional distress was that Karbah blocked York's lane with his vehicle and approached him while shouting and pointing a gun at him. Compl. ¶¶ 60–63. The Court has no doubt that such actions were indeed upsetting, but it was not until after they had occurred that York or anyone else could have ascertained a connection between Karbah and the District. Again, there is no allegation that Karbah was in uniform, in a police car, or even showed his badge. The first indication in the Complaint of when York learned about Karbah's official position was when Karbah told him—after the immediate altercation had passed and York had already hung up with 911. Compl. ¶ 26. There is no reasonable inference, from York's point of

---

[8] Virginia's test for apparent authority tracks this same objective standard, and therefore York's apparent authority argument would fail under Virginia law for the same reasons. "An act is within the apparent scope of an agent's authority if, in view of the character of his actual and known duties, an ordinarily prudent person, having a reasonable knowledge of the usages of the business in which the agent is engaged, would be justified in believing that he is authorized to perform the act in question." *Doe*, 857 S.E.2d at 587 (quoting *Neff Trailer Sales, Inc. v. Dellinger*, 269 S.E.2d 386, 388 (Va. 1980)).

view at that time, that Karbah's actions were "regular on [their] face" or that Karbah was "acting in the ordinary course of . . . business." *Gary*, 59 F.3d at 1397.

This distinction is bolstered by contrast to *Buie v. District of Columbia*, a case in which the plaintiff successfully stated a claim for vicarious liability under Restatement Second of Agency § 219(d) even though the officer was not acting within the scope of his employment. 273 F. Supp. 3d 65, 68 (D.D.C. 2017). In that case, there were specific factual allegations showing that the alleged sexual assault "was accomplished by the use of instrumentalities associated with the officer's official position," including that he was "wearing his full police uniform and armed at the time of the assault," that he transported plaintiff to the police department's headquarters in an official police vehicle, and that he used his police credentials to access the headquarters, where he committed the assault. *Id.* at 69. Unlike the plaintiff in *Buie*, who had reason to recognize and rely on the officer's apparent authority, York could not have known at the time that Karbah was a police officer at all, rather than just an angry civilian driver with a gun. An employer cannot have been said to have aided or provided apparent authority to a tortfeasor where the "victim[] had no opportunity to even make the determination of whether to rely upon [the] alleged apparent authority." *Halmon-Daniels v. Experts, Inc.*, No. 15-cv-1501, 2016 WL 4921404, at *33 (D.D.C. Sept. 15, 2016), *order modified in non-relevant part upon reconsideration sub nom. Delorenzo v. HP Enter. Servs., LLC*, No. 15-cv-0216, 2016 WL 6459550 (D.D.C. Oct. 31, 2016) (internal quotations and alteration omitted).

The only alleged marker of Karbah's employment status was the handgun he used, *see id.* ¶ 62, but there is likewise no allegation that York could have or did recognize it as a police-

13

issued weapon.[9]  The Court acknowledges that the police-issued handgun was an instrumentality that in some sense aided Karbah in committing the alleged tort.  But "[t]he fact that an employee's work 'afforded him an opportunity to' commit the [tort] is 'insufficient to make an employer vicariously liable.'"  *Halmon-Daniels*, 2016 WL 4921404, at *34 (quoting *Boykin*, 484 A.2d at 563–64) (alteration omitted).  And "a master is not liable for harm caused by the use of instrumentalities entrusted by him to a servant when they are not used in the scope of employment."  Restatement (Second) of Agency § 238.

### C.  Concluding Matters

Because the District is not vicariously liable for Karbah's acts as alleged under Count Three, the Court will grant its motion to dismiss that count.  However, the Complaint asserts claims against Karbah in both his individual and official capacity.  Compl ¶ 9.

A § 1983 claim "for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself."  *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996).  Count One, for violation of York's Fourth Amendment rights, must therefore be understood as against both Karbah in his individual capacity and the District itself.  *See* Compl. at 5 ("Defendant McHugh's [sic] Violation of Plaintiff York's Fourth Amendment Rights Under 42 U.S.C. § 1983").  "Section 1983 claims are properly brought against government actors in their personal capacity," *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 237

---

[9] The Court of Appeals of Michigan reached a somewhat contrary conclusion in *Graves v. Wayne Cnty.*, where it held that the plaintiff had sufficiently alleged vicarious liability under an apparent authority theory by alleging that the off-duty police officer who shot the plaintiff was required "to wear [his] service revolver[] twenty four hours a day."  333 N.W.2d 740, 742–43 (Ct. App. Mich. 1983).  *Graves*, while not binding, is distinguishable for a few reasons: the defendant officer was required to carry a gun even when off-duty, the incident occurred within the county where the officer was employed, and the officer attempted to place the plaintiff under arrest, making it likely the plaintiff was aware of the officer's official position at the time.  *See id.* at 741.

(D.D.C. 2018), and "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," *Iqbal*, 556 U.S. at 676. "Likewise, a tort action brought against city officials in their official capacities is equivalent to an action against the city itself." *Barnes v. District of Columbia*, No. 03-cv-2547, 2005 WL 1241132, at *3 (D.D.C. May 24, 2005); *see also Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005); *Price v. District of Columbia*, 545 F. Supp. 2d 89, 95–96 (D.D.C. 2008); *Coley v. Bowser*, No. 20-cv-2182, 2021 WL 1578295, at *8 (D.D.C. Apr. 22, 2021).

It is the "overwhelming approach" in this district to summarily dismiss "government officials sued in their official capacities in conjunction with suits also filed against the municipality." *Price*, 545 F. Supp. 2d at 94 (collecting cases). But the Court has not located any case in which an official capacity claim was dismissed *sua sponte* without a defendant moving for dismissal. *Cf. Coley*, 2021 WL 1578295, at *10 (declining to dismiss a series of tort claims brought against defendants in their official capacities because "no Defendant has presented a freestanding argument for the dismissal of these official capacity claims"); *Barnes*, 2005 WL 1241132, at *3 (dismissing an official capacity claim against a non-moving defendant after finding that basis applicable to a co-defendant who had moved to dismiss). As no party has asked the Court to address the sufficiency of the remaining official capacity claims against Karbah, it will not do so here, and the District will remain a party to this action with regard to Counts One and Two.

## CONCLUSION

For the foregoing reasons, Defendant District of Columbia's Motion to Dismiss is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 19, 2021                                                                    RUDOLPH CONTRERAS
                                                                                            United States District Judge